**E. WOLFSON and A. Putterman, Plaintiffs,**

v.

**Irwin SOLOMON et al., Defendants.**

**No. 71 Civ. 1359.**

United States District Court, S. D. New York.

Jan. 19, 1972.

Supplementary Order March 22, 1972.

Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiffs by Stanley L. Kaufman, Allan K. Peckel, New York City, of counsel.

Willkie, Farr & Gallagher, New York City, for defendant CBWL–Hayden, Stone Inc. by Anthony F. Phillips, John C. Fleming, Jr., New York City, of counsel.

Sullivan & Cromwell, New York City, for defendant Haskins & Sells by John L. Warden, New York City, of counsel.

Lawler, Sterling & Kent, New York City, for defendants Irwin Solomon and others by Gerald A. Kaufman, New York City, of counsel.

GURFEIN, District Judge.

This is a motion by the plaintiffs to declare that the action may be maintained as a class action pursuant to Fed. R.Civ.P. 23(b) (3). Plaintiffs, purchasers of securities of the defendant, The Seaboard Corporation ("Seaboard"), have brought this class action to recover, for themselves and for numerous other persons similarly situated, damages resulting from an allegedly false registration statement.

Jurisdiction is based on Section 22(a) of the Securities Act of 1933 and Section 27 of the Securities Exchange Act of 1934. Plaintiffs invoke Section 11 of the Securities Act, Section 17 thereof, Section 10(b) of the Securities Exchange Act and SEC Rule 10b–5 thereunder as the principal bases of their claim.

Defendant Seaboard is a Delaware corporation. Defendant CBWL-Hayden, Stone Inc. ("CBWL") is a corporation in the investment banking and stock brokerage business and has its principal office in the Southern District of New York. CBWL was the principal underwriter of Seaboard securities sold under the allegedly false and misleading registration statement. In addition to the defendant Seaboard, the other defendants are Haskins & Sells, a firm of certified public accountants which acted as Seaboard's auditors, and certain individuals who were officers and directors of Seaboard during the period of the events complained of and who signed the registration statement.

Briefly, the facts underlying this action involve an allegedly false and misleading registration statement becoming effective January 27, 1970, under which Seaboard's units [1] and common stock were sold to the public, including the plaintiffs. The complaint maintains that this registration statement had the effect of falsely inflating the over-the-counter market price of Seaboard's units and common stock until on or about July 2, 1970, when certain financial disclosures were made. Seaboard units purchased by the plaintiffs on or about January 27, 1970 at $13.50 had dropped to approximately $4 on March 23, 1971, the date of commencement of this action. The plaintiffs and the class, accordingly, are alleged to have suffered substantial loss and damage by reason of the defendants' claimed violations of the Federal securities laws.

Damages are sought for the plaintiffs and the class on whose behalf this action has been brought. The latter is comprised of those persons who, like the plaintiffs, purchased common stock or units of Seaboard during the period between January 27, 1970 and July 2, 1970.

---

1. A unit is two shares of common stock and one warrant to purchase an additional share of stock at $6 per share exercisable between February 8, 1970 and December 31, 1974.

■ In determining whether a single class may be formed, it will be noted that the first of the two counts is based upon Section 11 of the 1933 Act (15 U.S.C. § 77k),[2] while the second count rests on Section 17 of the 1933 Act (15 U.S.C. § 77q),[3] Section 10(b) of the 1934 Act (15 U.S.C. § 78j(b)), and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5). The plaintiffs purchased their stock directly from the underwriter on the basis of the registration statement in issue. It is now clear that only persons who purchased securities that are the direct subject of the prospectus and registration statement may sue under Section 11. Barnes v. Osofsky, 373 F.2d 269, 273 (2 Cir. 1967). The redress of others who purchased identical securities already being traded on the open market must depend upon some violation other than a violation of Section 11, and thus they cannot avail themselves of the relatively less stringent standards for recovery under Section 11.

■ On the other hand, standing to sue under Section 11 does not limit a claim for relief to that section. A person who is defrauded under Section 10 (b) of the 1934 Act or Section 17 of the 1933 Act may sue under those sections, if the appropriate elements of such claims are present, even though a cause of action coexists under Section 11. Rosen v. Bergman, 40 F.R.D. 19, 21–22 (S.D.N.Y. 1966), and cases there cited.

On this complaint, the individual plaintiffs may claim under Section 11 and, as well, under Section 17 of the 1933 Act and Section 10(b) of the 1934 Act.

■ The conclusion to be drawn for a class action making such multiple claims is that there are two classes: (1) the Section 11 class, and (2) the fraud class. This is what Judge Herlands held in Weiss v. Tenney Corp., 47 F.R.D. 283 (S.D.N.Y.1969). If the instant action is to be a class action, then it must embrace two classes, for there will be persons who purchased on the open market and cannot avail themselves of the remedies of the Section 11 class. If the plaintiffs did not belong to both classes they could not be representative of both. See 3B Moore, Federal Practice ¶ 23.04 (2d ed. 1969); Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Bluestein v. Friedman [1969–70 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 92,-558, at 98,544 (S.D.N.Y.1970); Greenstein v. Paul, 275 F.Supp. 604, 605 (S.D. N.Y.1967), aff'd, 400 F.2d 580 (2 Cir. 1968); Chashin v. Mencher, 255 F.Supp. 545 (S.D.N.Y.1965). These plaintiffs, however, do belong to both classes, in that they are entitled to press claims both under Section 11 and the fraud sections; and hence they would have the right to represent both classes, unless there is a conflict of interest.

■ The defendants urge that there is a conflict between the two classes. Under Section 11(e) of the 1933 Act, "a shareholder who has not sold his stock when suit is commenced can recover a maximum of the difference between the

2. Section 11(a) reads in part: "In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue—
 (1) every person who signed the registration statement; * * *"

3. Section 17(a)(2) reads: "It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—* * *
 (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, * * *"

price he paid for the stock or the offering price, whichever is lower, and its value when *suit was commenced.*" Rosenfield v. Integrated Container Service Industries Corp., 50 F.R.D. 237, 239 (S. D.N.Y.1970).[4] In the antifraud actions, the measure of damages would not be so limited; but it is claimed *scienter* and reliance would have to be shown. The defendants suggest that, in view of the easier proof required under a Section 11 claim, a common plaintiff who represents both classes would tend to proffer the easier proof under Section 11 and then rest upon his laurels, oblivious to the fate of the fraud class. I do not believe the argument to be persuasive for two reasons. First, there may be greater recovery under the antifraud sections where Section 11(e) does not apply; and second, it is unrealistic to think that the common lawyer for both classes will forget the fee implications of a greater recovery. While lawyers in these class suits are earning their keep as private Attorneys General, they are not seeking to minimize the recoveries which measure their fees.

With this background then, that there would be two classes and that the same plaintiff is in each class and can represent both without conflict of interest, we proceed to determine whether this is a proper case under Rule 23.

▮ While the class action is peculiarly appropriate to claims of securities violations (Green v. Wolf Corp., 406 F.2d 291 (2 Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969)), we must nevertheless test the allegations against the specific criteria of Rule 23. But even before that, we must consider the contention of the defendants that, literally read, Rule 23 requires findings of fact to be made before a class may be determined;[5] and that this, in turn, mandates an evidentiary hearing in all cases. Any other conclusion would be premature, the argument runs, and particularly dangerous, because we are dealing with questions of due process and with a theory of res judicata that binds even those who fail to participate actively and who merely acquiesce silently by failure to opt out of the class.

The argument is appealing, and certainly should not be rejected out of hand. The difficulties of rigorously applying such an interpretation of the Rule are, however, apparent. Firstly, the crowded dockets of our Federal courts do not permit the luxury of extensive hearings on the subject, except where necessary. Dolgow v. Anderson, 438 F.2d 825 (2 Cir. 1971), may have accomplished little, if the evidentiary hearing does not eventually result in summary judgment that survives appeal. Secondly, it cannot be denied that compulsion to prove the requisites of a class action by an evidentiary hearing with confrontation and cross examination, at the very threshold of the lawsuit, would dampen and perhaps freeze the elan of plaintiffs, theretofore eager to vindicate the securities laws. Thirdly, we have adopted a rule in this Court (Civil Rule 11A(c)) which reads:

"(c) Within sixty (60) days after the filing of a pleading asserting a claim for or against a class, the party asserting that claim shall move for a determination under Fed.R.Civ.P. 23 (c) (1) as to whether the action is to be maintained as a class action and, if

---

4. Alternative subtrahends in the Section 11(e) calculation are: "(2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security

. . . and the value thereof as of the time such suit was brought . . ."

5. The word "findings" appearing in Fed.R. Civ.P. Rule 23(b) (3), it is noted, is the same word that *appears* in Rule 52. But see Interpace Corp. v. City of Philadelphia, 438 F.2d 401, 404 (3 Cir. 1971).

so, the membership of the class. In ruling upon such a motion, the court may allow the action to be so maintained, may disallow and strike the class action averments, or may order postponement of the determination pending discovery or such other preliminary procedures as appear to be appropriate and necessary in the circumstances. Whenever possible, where the determination is ordered to be postponed, a date will be fixed in the order for renewal of the motion before the same judge."

The emphasis is clearly on an *early* determination of whether the action is properly a class action "and, if so, the membership of the class." It is true that the Court "may order postponement of the determination pending discovery" etc., but the thrust of the Rule is that, unless such postponement is ordered, the motion is for a "determination" and should be decided promptly. The same emphasis on an early determination, as specified in our Court Rule, exists under Rule 23 itself. Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39, 40–42 (1967); Advisory Comm. Notes to Rule 23, 39 F.R.D. 104 (1966).

The interpretation of some Federal rules, promulgated by the Supreme Court, may prove as elusive as that of some statutes enacted by a legislature. Judges will never escape the duty to interpret such rules any more than they can escape the duty to interpret the statutes. Purpose and meaning must still be found in preference to an unfailing obedience to literalism. The "findings" required under Rule 23, in the light of their meaning under our Court's Civil Rule 11A, do not

mandate an evidentiary hearing in every case.[6] Pleadings and affidavits will normally suffice to supply the data required. And that has been the trend of our thinking, even before the Local Rule was adopted in this District. See Weiss v. Tenney Corp., *supra*, 47 F.R.D. at 287.

In this case, I am ready to proceed to a determination on the papers before me, save for one matter discussed below—the numerousness of the fraud class.

*1. The plaintiffs will fairly and adequately protect the interests of the class.*

Even a single plaintiff may represent a class. (Green v. Wolf Corp., *supra*, 406 F.2d at 298; Brennan v. Midwestern United Life Ins. Co., 259 F.Supp. 673 (N.D.Ind.1966).) The two plaintiffs here bought their stock on or about January 27, 1970, after the issuance of the allegedly false and misleading registration statement bearing that date. The class of persons who bought on the basis of the January 27, 1970 registration statement, therefore, includes the plaintiffs. All are similarly situated. Moreover, as previously indicated, "in many cases such as this the possibility of recovering attorney's fees will provide the sole stimulus for the enforcement" of class rights. Smolowe v. Delendo Corp., 136 F.2d 231, 241 (2 Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943); see Escott v. Barchris Construction Corp., 340 F.2d 731, 733 (2 Cir.), cert. denied, Drexel & Co. v. Hall, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965). Finally, counsel for the plaintiffs are expert in this field and, in the experience of this Court, quite assiduous. The classes will be represented fairly and adequately. The Court will, of

---

6. See Interpace Corp. v. City of Philadelphia, *supra*. Significantly, the two appellate cases finding an inadequate factual record, which are cited by defendants, Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2 Cir. 1968), on remand, 52 F.R.D. 253 (S.D.N.Y.1971), and Knuth v. Erie-Crawford Dairy Cooperative Assn., 395 F.2d 420 (3 Cir. 1968), both reversed denials below of a class action motion.

A denial should, of course, not be made without giving the plaintiffs an evidentiary opportunity, if requested, except in a rare case; this is true because such a denial is often an effective end of the suit. Furthermore, a relatively simple securities case, on the law, may require treatment different from that given a complex antitrust case such as *Knuth*.

course, oversee the progress of the action. Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42 (S.D.N.Y. 1966).

### 2. The numerousness of each class.

■ The Section 11 class includes those who bought the shares directly from the underwriter on the basis of the prospectus. They are at least 546 in number. That is too large a number for individual participation and is large enough to make a class.

■ With respect to those who bought their stock over the counter, no clear picture has yet emerged. There was an over-the-counter market in the Seaboard stock, but the *volume* of trading is not known from the "bid" and "asked" of the "pink sheets." There is a burden on the plaintiffs to show the approximate number of plaintiffs that would be involved in the class. Demarco v. Edens, 390 F.2d 836, 845 (2 Cir. 1968); Male v. Crossroads Associates, 320 F.Supp. 141, 150 (S.D.N.Y.1970). It is an essential element in the requirement that the plaintiffs "make a positive showing that it would be impracticable to deny" maintenance of the class action. *Id.* This burden has not been met up to now, apparently because the defendants have refused to honor the requests for information under Rule 34. The Court will, therefore, order the defendant Seaboard to supply to the plaintiffs' counsel, within twenty days, any information they have of how many persons bought Seaboard stock, which was not directly subject to the registration statement, over the counter between January 27, 1970 and July 2, 1970 (when the fraud was supposedly cured). If such information is not available, they may furnish the record of transfers during that period in lieu thereof. The determination of whether the over-the-counter purchasers constituted a class will be held in abeyance until this information is furnished to the Court. The class would, in no event, include persons who purchased before January 27, 1970.

### 3. Common questions of law and fact predominate.

The essence of the action is that there were material omissions and misstatements in the registration statement and prospectus issued January 27, 1970, which failed to reveal the substantial deterioration in the business and operations of Seaboard in the last three months of 1969. These adverse facts were allegedly concealed from the public until July 2, 1970.

The predominant questions of law and fact are: (1) whether the registration statement and prospectus were false and misleading; (2) whether the market price of Seaboard securities was inflated in violation of Section 17 of the Securities Act and Section 10(b) and Rule 10b–5 of the Securities Exchange Act as a result of the acts and omissions complained of; and (3) what duties of fair disclosure were owed to the class by the defendants and were these duties breached.

*Rosenfield, supra,* involved a complaint quite similar to this one. It was an action for damages arising from alleged misrepresentations in a prospectus, and for recovery based on allegations that such misrepresentations were part of a larger scheme to manipulate stock. The plaintiffs included persons who bought securities subject to the registration statement in question and persons who bought other securities in the open market. Judge Metzner held a class action to be proper, although it should be mentioned that the defendants did not dispute that the case met all the prerequisites set forth in Rule 23 for a class action.

The defendants here, however, do not concede that the prerequisites are met. They contend that common questions of law or fact do not predominate over any questions affecting only individual members. They argue that the fraud claimants would have to prove reliance, List v. Fashion Park, Inc., 340 F.2d 457 (2 Cir. 1965), cert. denied, 382 U.S. 811, 86

S.Ct. 23, 15 L.Ed.2d 60 (1966), while the Section 11 claimants would not; and that, even within the category of fraud claimants, there will be serious differences in degrees of reliance.

The assumption that there must be reliance in a Section 10(b) or Section 17 case is not of universal validity. The case of an *omission*, which is the gravamen here, is not subsumed under the broad generalization. Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 797 (2 Cir. 1960), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970); see Esplin v. Hirschi, 402 F.2d 94, 99–100 (10 Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). See also Green v. Wolf Corp., *supra*, 406 F.2d at 301. "In non-disclosure cases, reliance has little if any rational role." A. Bromberg, Securities Law: Fraud, SEC Rule 10b–5, § 8.6(1), at 209 (1967); see Epstein v. Weiss, 50 F.R.D. 387, 393 (E.D.La.1970).

 It is the market impact which arises from the nondisclosure that causes the injury, rather than the nondisclosure itself. The issue may well be whether a buyer on the market, after a false financial statement has been issued, will have to prove reliance on the false statement itself. The plaintiffs claim that they will not have to prove such reliance, citing Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) and Kahan v. Rosenstiel, 424 F.2d 161, 173 (3 Cir.), cert. denied sub nom. Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). That need not be decided now. It is sufficient to say that it is a common question of law for the whole fraud class. And, at any rate, the fact that reliance is an "issue lurking" in the action does not destroy the class action. Green v. Wolf Corp., *supra*, 406 F.2d at 301; see Vernon J. Rockler & Co. v. Graphic Enterprises, Inc., 52 F.R.D. 335 (D.Minn.1971).

While the burden of proof as to damages may be on the defendants in a Section 11 action and on the plaintiffs in a Section 10(b) action, the measure and mode of proving damages, though different, do not create an improper mixture in a class suit. In this type of case, liability can be tried in advance of damages, and even if tried to a jury, the same jury may try the damage issue after liability has been determined. In short, the issues of reliance and individual damages do not preponderate over the common questions of law and fact. The Section 11 violation, if it exists, will be proved in the course of proving the Section 10(b) violation, if it exists.

*4. The claims of the representative parties are typical of the claims of the class.*

 From what has been said, thus far, it should be apparent that the Court believes that the members of each class will be well represented, that the claims of the plaintiffs are typical of those of the class, and that the interests of the representative parties are not in conflict with the interests of the class. If it should turn out that this is not so, the Court can always separate the representation of the classes, create subclasses, or dismiss the class aspect of the action. Fed.R.Civ.P. 23(c), (d).

*5. Superiority of class action.*

 Lastly, the Court finds that, at this time, the requirements of Rule 23 (b) (3) are satisfied. As noted above, an abundance of authorities sustains the superiority of a class action in cases brought under the securities laws. In fact, the class action device is not only a superior method; it is often the only feasible one. Green v. Wolf Corp., *supra*.

For the foregoing reasons, a class will be formed consisting of those persons who purchased Seaboard securities that are the direct subject of the registration statement and prospectus, if the purchase occurred on or after January 27, 1970 and before July 2, 1970. At this time, the determination of whether a

second class (the fraud class), consisting of open market purchasers of securities not the subject of the particular registration, between the same dates, may be formed will be held in abeyance for thirty days to permit the plaintiffs to come forward with evidence of the numerousness of this second class.[7]

It is so ordered.

## SUPPLEMENTARY ORDER

■ In an opinion and order dated January 19, 1972, I withheld decision on the existence of the so-called fraud class, pending the production of evidence on the numerousness of that class. Since then the plaintiffs have informed the Court that over 2,000 persons purchased securities of Seaboard in the open market during the period between January 27, 1970 and July 2, 1970. This number would seem to include some trading in the securities subject to the registration statement in question, the buyers of which would fall into the Section 11 class. While the fraud class is thus not as numerous as the group of open market purchasers, that class would nevertheless appear to number somewhere in the hundreds. No contrary evidence has been forwarded to rebut this conclusion, i. e., there has been no showing that most of the over 2,000 persons were indeed trading in securities subject to the registration statement.

A class consisting of such purchasers is, therefore, found to be sufficiently numerous as to make impracticable the denial of a class action. On the basis of this finding and of my prior opinion, the fraud class, as above described, is hereby declared to exist.

The Court will retain jurisdiction to order at a later date such notice to the class members as will fulfill the requirements of Fed.R.Civ.P. 23(c) (2). I accept the contention of the plaintiffs' attorney that notice at this point would be premature, but instead should await fur-

ther discovery. See Fischer v. Kletz, 41 F.R.D. 377, 386 (S.D.N.Y.1966). However, the delay in the parties' making application regarding notice should not be overly prolonged. See 3B Moore's Federal Practice ¶ 23.55, at 23–1159 & n. 35 (2d ed. 1969).

It is so ordered.

---

7. As ordered above, the discovery necessary for this purpose is to be completed within twenty days.