See also, D.C., 65 F.R.D. 528.

**Hilda HERBST**

v.

**INTERNATIONAL TELEPHONE & TELEGRAPH CORPORA- TION et al.**

**Civ. No. 15155.**

United States District Court, D. Connecticut.

May 11, 1973.

James O'Connor Shea, New Haven, Conn., Sidney B. Silverman, Lawson F. Bernstein, New York City, for plaintiff.

Joseph P. Cooney, Hartford, Conn., John Q. Tilson, William J. Egan, New Haven, Conn., for defendants; Samuel E. Gates, Robert L. King, New York City, John H. Schafer, Washington, D. C., of counsel.

BLUMENFELD, Chief Judge.
### ACTION DESIGNATION

BLUMENFELD, Chief Judge.

The gravamen of this action is the plaintiff's allegation that the defendants have violated Section 10(b) of the Securities Exchange Act of 1934 (1934 Act), 15 U.S.C. § 78j(b) (1970), and SEC Rule 10(b)(5), promulgated thereunder, 17 C.F.R. § 240.10b–5, in that a written exchange offer (hereinafter the Prospectus) made by the defendant International Telephone & Telegraph Corporation (hereinafter ITT) to the holders of common stock of the Hartford

Fire Insurance Company (hereinafter Hartford Fire) contained misstatements and/or omissions of material fact. The parties do not dispute this court's jurisdiction to entertain this case.

Pursuant to Fed.R.Civ.P. 23(c) the plaintiff has moved for an order declaring that her action, commenced as a class action, can be so maintained. The defendants oppose this motion and alternatively contend that, if the court determines that this suit may be maintained properly as a class action, the scope of the class claimed to be represented by this plaintiff should be substantially narrowed. The court has considered the oral arguments presented at the hearing held on January 8, 1973, as modified by the extensive briefs, memoranda, affidavits and letters which have been filed before and after the hearing, all in light of " . . . the admonition of liberality toward demands for class suit status in securities litigation (particularly 10b–5 suits) . . .." Korn v. Franchard Corp., 456 F.2d 1206, 1209 (2d Cir. 1972) (citations omitted). For reasons that appear below, the plaintiff's motion is granted and the defendants' motion to narrow the scope of the designated class is denied at this time. Fed. R.Civ.P. 23(c)(1).

### I.

The criteria which control the decision whether a suit may be maintained as a class action are delineated in Fed. R.Civ.P. 23(a), (b). One or more members of the alleged representative class must satisfy the four prerequisites of subparagraph (a); and, in addition, the prerequisites of either subparagraph (b)(1) or (b)(2) or (b)(3) must be satisfied. Analysis of the mass of material submitted by defense counsel indicates that they have three significant objections to the maintenance of this suit as a class action. So that the import of these arguments may be understood, it will be useful to sketch the essential contours of the plaintiff's amorphous cause of action.

### II.

The plaintiff's complaint alleges, inter alia, that as early as April 1969 ITT undertook a course of conduct intended to result in the acquisition of Hartford Fire. To facilitate that acquisition by obtaining a pre-exchange revenue ruling from the Internal Revenue Service (hereinafter IRS) that the exchange of Hartford Fire stock for stock in ITT would not give rise to a taxable event,[1] it is alleged that ITT misrepresented its interest at the time of the exchange in some Hartford Fire stock obtained by ITT prior to the time of the exchange offer.[2] As a shareholder of Hartford Fire, the plaintiff received a Prospectus issued by ITT in 1970 which outlined the details of ITT's exchange offer to the shareholders of Hartford Fire. The substance of the information which the plaintiff claims led to the issuance of the aforementioned IRS ruling, as well as the fact of the IRS ruling, are disclosed in the Prospectus. This informa-

---

[1]. If the exchange of Hartford Fire stock for ITT stock was not a taxable event, the exchange would be non-taxable, as the plaintiff claims, in that no gain or loss would be recognized at the time of the exchange. Former Hartford Fire shareholders who exchanged and held their newly acquired ITT stock would, of course, be required to recognize whatever gain or loss they realized when they eventually disposed of their ITT stock.

[2]. The plaintiff claims that "(a)n unconditional divestiture of the purchased Hartford stock to an unrelated third party was required (by IRS) in order to qualify the exchange as tax-free under the relevant provisions of the Internal Revenue Code and the rulings promulgated thereunder," (plaintiff's Memorandum of Law in Support of Motion for Class Action Determination at 3) and that ITT gave false information to IRS in order to make it appear that it had complied with the above mentioned Internal Revenue Code provisions and IRS rulings.

tion constitutes the heart of the misrepresentations which, the plaintiff claims,

> " . . . induce(d) Hartford shareholders, who otherwise might not have exchanged, to tender their Hartford shares . . . (and) induced (other Hartford shareholders) to exchange on less favorable terms than they otherwise would have accepted if they had been informed of the tax risks." Plaintiff's Complaint at paragraph 17.[3]

### III.

■ The plaintiff, Hilda Herbst,[4] seeks to represent " . . . all persons who exchanged Hartford common stock for ITT preferred pursuant to the exchange offer."[5] The parties do not dispute that the group of persons who exchanged their Hartford Fire stock for ITT preferred presently includes persons who have subsequently disposed of the ITT stock so acquired, and others who presently retain those shares of ITT. Because the plaintiff has disposed of the shares of ITT which she received in exchange for her Hartford Fire stock, the defendants contend that she cannot adequately represent the interests of all Hartford Fire shareholders who exchanged their stock for ITT.[6] The defendants contend not only that her interests are not co-extensive with the interests of the class, but that an irreconcilable antagonism necessarily exists between the two groups of Hartford Fire shareholders described above. See 3B Moore's Federal Practice, para. 23.07(2–3).

In the context of this motion, the defendants' contention amounts to a difference without a distinction. Neither of the two considerations which underlie this argument indicates that this plaintiff will not adequately represent the interests of the class she seeks to represent; or that the obvious benefits which a class action will provide in the efficient and just resolution of this securities fraud suit must be foregone.

Because jural effect has been given in some instances to the difference between persons who have bought and sold stock, and persons who have not yet disposed of their stock, cf. Fed.R.Civ.P. 23.1; 3B Moore's Federal Practice, para. 23.1.17, at 23.1–151; Herman v. Steadman, 50 F.R.D. 488 (S.D.N.Y.1970), the defendants urge that difference here. But the policy considerations which justify recognition of that difference in some legal contexts do not apply with the same force where the question is the propriety of a class action designation. As several courts in this circuit have noted:

> "Practically every class action that can be brought under the Securities Acts by purchasers of securities involves claims both by those who retained their securities and those who sold them or by those who sold some

---

3. See Fed.R.Civ.P. 23(a)(2); Korn v. Franchard Corp., *supra*, 456 F.2d at 1210.

4. Although Hilda Herbst continues to be the sole named plaintiff, her counsel has informed the court that additional plaintiff(s) who presently retain the ITT stock received in exchange for their Hartford Fire stock will probably be added.

5. Class members are estimated to approximate 16,000 persons. See Fed.R.Civ.P. 23(a)(1); Korn v. Franchard Corp., *supra*, 456 F.2d at 1209; Wolfson v. Solomon, 54 F.R.D. 584, 591 (S.D.N.Y.1972).

6. Although the defendants claim that this objection, and the one that follows, properly

go to the typicality of the plaintiff's claim(s), see Fed.R.Civ.P. 23(a)(3); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 563 (2d Cir. 1968) (hereinafter *Eisen II*); 3B Moore's Federal Practice, para. 23.06–2, at 23–325, analysis of the operational significance of these objections will be facilitated if they are considered with regard to the particularly important criterion of whether the representative plaintiff will adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4); *compare* Dolgow v. Anderson, 43 F.R.D. 472, 494 (E.D.N.Y.1968), rev'd on other grounds, 438 F.2d 825 (2d Cir. 1971), *with* 3B Moore's Federal Practice, para. 23.07(1), at 23–352.

securities, but still retain others. The answer to this problem is twofold. On the one hand, it is simply that every defrauded stockholder wears two hats, but that his personal interest far overshadows his interest as an equity-holder. Moreover, if, by chance, any class member currently has holdings . . . so large that he would prefer not to assert his claims for past losses, such a person, once notified of the pending action, always has the option under Fed.R.Civ. P. 23(c)(2) to request exclusion from the class." Herbst v. Able, 47 F.R.D. 11, 15 (S.D.N.Y.1969).

See also Feder v. Harrington, 52 F.R.D. 178, 182 (S.D.N.Y.1970). Accordingly, the fact that the plaintiff no longer retains the ITT stock received in exchange for her Hartford Fire stock does not indicate that she is unable to adequately protect the interests of the entire class which she claims to represent.

Moreover, denial of class action status would not be warranted even if the damages suffered by these distinct categories of class members ultimately would have to be measured by varying criteria. In a case where it did appear that damages would depend, at least in part, on whether the shareholder(s) still retained shares, Judge Weinstein observed:

"These two groups can be differentiated only on the basis of their damages. This distinction bears no relation to the common questions relating to liability that will be tried as part of the class action so that a narrowing of the class for this reason at this stage of the litigation is not warranted." Dolgow v. Anderson, *supra,* 43 F.R.D. at 493.

If it appears at some time in the future that the proper allocation of damages would be effectuated by the designation of appropriate subclasses, it is undisputed that the court has all the power necessary to implement such a procedure. Fed.R.Civ.P. 23(c)(4).[7] In any event, problems well down the road which may be pertinent to the procedures which ultimately should govern the allocation of damages need not and should not provide a roadblock to the prompt and conditional determination of whether this suit may be properly maintained as a class action. Fed.R.Civ.P. 23(c)(1).

The defendants also contend that the plaintiff, a taxpayer, cannot adequately represent the interests of the many large[8] Hartford Fire shareholders who were exempt from the federal income tax at the time of the exchange. Superficial analysis might lead to the conclusion that the tax-exempt Hartford Fire shareholders could suffer no damage from the misrepresentation of the tax consequences of exchanging their Hartford Fire stock for ITT, i. e., that as to these shareholders this "misrepresentation" was not material. From this the defendants contend that these shareholders and the plaintiff lack the requisite commonality of interest to be combined in a single class. But this analysis overlooks the subtleties of the plaintiff's complaint. If, as alleged, the effect of this misrepresentation was to induce some Hartford Fire shareholders to exchange their shares on terms less favorable than those which would have been offered if the tax consequences

---

7. The Committee Note of the 1966 Revision of Rule 23 noted that:
"  . . .  in a fraud or similar case the action may retain its 'class' character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims." 3B Moore's Federal Practice, para. 23.01(11.–4), at 23–34.

8. The defendants' unsupported implication that many large shareholders might choose to refrain from vindicating their legal rights would not, even if supported, affect the plaintiff's ability to maintain this suit as a class action. 3B Moore's Federal Practice, para. 23.06–2, at 23–327.

had been properly represented, the tax-exempt shareholders may well have been damaged as much as the non-tax-exempt shareholders since the single exchange offer was made equally to all shareholders without regard to their status qua taxpayers. The different tax status of the Hartford Fire shareholders does not bar the maintenance of this suit as a class action.

Although the court has carefully considered the defendants' other arguments concerned with the adequacy of the protection of the interests of the class which the representative party and her counsel [9] will provide, none of these considerations require that the class claimed to be represented be narrowed or that the decision that this suit may be maintained as a class action be delayed.

# IV.

■ The parties agree that if this suit may be maintained properly as a class action, it can be so maintained pursuant to Fed.R.Civ.P. 23(b)(3).[10] The defendants contend that questions of fact common to the members of the class do not predominate over questions affecting only individuals.[11] The heart of their argument is that proof of reliance by the exchanging Hartford Fire shareholders upon the material fact(s) which the defendants have allegedly misstated and/or omitted from the Prospectus is a sine qua non for recovery.[12]

Assuming arguendo that the defendants' contention retains some merit, their corollary conclusion that this suit may not proceed as a class action because questions of law or fact common

9. The defendants have not contended that there is anything "to indicate that the plaintiffs do not intend to prosecute this action vigorously or that plaintiffs' attorney is not competent to do so." Dolgow v. Anderson, *supra*, 43 F.R.D. at 494; see also Wolfson v. Solomon, *supra*, 54 F.R.D. at 590; 3B Moore's Federal Practice, para. 23.07(1 & 4) (numerical representation and the quality of counsel).

10. Rule 23(b)(3) provides:
"Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
   *     *     *     *     *
"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

11. The defendants' contention that maintenance of this suit as a class action may not be fair or efficient overlooks the fact that Fed.R.Civ.P. 23(b)(3) requires that the fairness and/or efficiency of maintaining a suit as a class action are relative criteria to be evaluated by comparison with other available and superior methods. 3B Moore's Federal Practice, para. 23.45(3), at 23–802. Notwithstanding the defendants' terse argument to the contrary, no method or procedure has been suggested to the court which would dispose of this securities fraud case more fairly and efficiently than by a class action. See, e. g., Green v. Wolf Corp., 406 F.2d 291, 301 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Vernon J. Rockler & Co. v. Graphic Enterprises, Inc., 52 F.R.D. 335, 346 (D. Minn.1970); Wolfson v. Solomon, *supra*, 54 F.R.D. at 592.

12. The defendants have not seriously pursued the enumerated underlying issues pertinent to this inquiry, Fed.R.Civ.P. 23(b)(3)(A–D). Of these, only Fed.R.Civ.P. 23(b)(3)(D) (management difficulties) would appear to present a colorable issue and the court's rejection of the defendants' analysis of the significance of reliance (for purposes of this motion) negates any claim that the maintenance of this suit as a class action would present unusual management difficulties. Korn v. Franchard Corp., *supra*, 456 F.2d at 1214.

to the members of the class do not predominate is nevertheless without merit.

> "Carried to its logical end, it would negate any attempted class action under Rule 10b–5, since as the District Courts have recognized, reliance is an issue lurking in every 10b–5 action." Green v. Wolf Corp., *supra,* 406 F.2d at 301 (citation omitted).

The problematic relationship between reliance and materiality, causation and damage, and the mechanisms whereby reliance may be demonstrated, have been noted by courts which have faced these issues in the context of securities fraud cases. See, e. g., Korn v. Franchard Corp., *supra,* 456 F.2d at 1212; Green v. Wolf Corp., *supra,* 406 F.2d at 310. While these issues may not yet be completely settled in this circuit, Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341, 400 (2d Cir. 1973), that the presence of the issue of reliance is no bar to the designation of a class action in a case such as this is beyond dispute.

> "(W)here the activities allegedly giving rise to liability are standardized, as where uniform misrepresentations are made to all members of the group, proof of individual reliance as well as individual damages may effectively be severed and treated in subsequent proceedings. . . . (S)ubstantively, it may be relatively immaterial once the form of fraud giving rise to liability is determined." 3B Moore's Federal Practice, para. 23.45 (2), at 23–762–764.

See also Affiliated Ute Citizens v. United States, 406 U.S. 128, 153, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Korn v. Franchard Corp., *supra,* 456 F.2d at 1212 nn.15–19; Wolfson v. Solomon, *supra,* 54 F.R.D. at 591; Feder v. Harrington, *supra,* 52 F.R.D. at 183; Berland v. Mack, 48 F.R.D. 121, 128 (S.D. N.Y.1969); Herbst v. Able, *supra,* 47 F.R.D. at 16; Dolgow v. Anderson, *supra,* 43 F.R.D. at 490.

## V.

In a case such as this, Fed.R.Civ.P. 23(c)(2) requires that the court shall direct to members of the class "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir. 1973) (hereinafter *Eisen III*).

■ The identity of substantially all of the members of this class may be "ascertained through reasonable effort," *Eisen III, supra,* 479 F.2d at 1009, and accordingly actual individual notice must be given. The names of the members of the class may be taken from ITT's computer tapes which list the names of the Hartford Fire shareholders at the time of the exchange offer.

It does not now appear that supplementary forms of notice, or other procedures, are required to insure that actual notice will be received by the members of the class. But see, e. g., Berland v. Mack, *supra,* 48 F.R.D. at 130; Herbst v. Able, *supra,* 47 F.R.D. at 21.

■■ Resolution of which party [13] should bear the cost of providing notice necessarily begins with the observation in *Eisen II, supra,* 391 F.2d at 568, that "(t)he task of furnishing notice to the class members in such a case as this must rest upon the representative party when he is the plaintiff." [14] (Footnote

---

13. The plaintiff's suggestion that the cost of notice be borne by the court is not a viable alternative. See Administrative Office United States Courts Memorandum No. 562, Supplement No. 2 (March 26, 1973); *Eisen II, supra,* 391 F.2d at 568 n.23; 3B Moore's Federal Practice, para. 23.55, at 23–1155 n. 21.

14. The full import of that decision has not been free from doubt. See, e. g., Green v. Wolf Corp., *supra,* 406 F.2d at 301 n.15;

omitted). In the most recent round of the *Eisen* litigation, *Eisen III, supra,* 479 F.2d at 1009 n.5, the court focused directly on this issue and more fully delineated the considerations which control a district court's discretion under Fed.R.Civ.P. 23(c)(2) in allocating the cost of providing the requisite notice between the parties. Although that decision indicates that there may be circumstances which might excuse the plaintiff from paying all or part of the expense entailed in giving the notice required by Fed.R.Civ.P. 23,[15] *Eisen III, supra,* 479 F.2d at 1009 n.5, such circumstances are not presented by this action.[16]

Assuming arguendo that the relative economic burden of the provision of notice is a relevant factor which this court properly may consider in the exercise of its discretion, *Eisen III, id.,* the expense of providing the notice ordered herein, estimated by the plaintiff at approximately $2240, does not appear to be so burdensome as to warrant excusing the plaintiff from paying it. See Korn v. Franchard Corp., 50 F.R.D. 57, 60 (S.D.N.Y.1970). This is not a petty sum; and the plaintiff claims to be "not a wealthy woman." However, there is no allegation, nor reason to believe, that requiring this plaintiff, in conjunction with any plaintiffs subsequently named as representative parties, see footnote 4, *supra,* to bear this preliminary cost of litigation intended ultimately to benefit them will sound the death knell of this action. See Berland v. Mack, *supra,* 48 F.R.D. at 131.[17]

In addition to bearing the cost of printing, stuffing, and mailing the notice to the class, the plaintiff shall bear the administrative burden of mailing the notices. However, to facilitate and expedite the plaintiff's task, see Wolfson v. Solomon, *supra,* 54 F.R.D. at 593; 3B Moore's Federal Practice, para. 23.55, at 23–1159 n.35, the defendants will provide her with the requisite materials in their possession.

Accordingly, the court finds that the prerequisites to maintenance of a class action as delineated in Fed.R.Civ.P. 23(a) and (b)(3) exist, and

It is hereby ordered that:

1. The plaintiff's motion for a determination that her action may be maintained as a class action is granted.

2. Pursuant to Fed.R.Civ.P. 23(c)(1), this order is subject to future modification by this court and may be altered or amended prior to decision on the merits.

Eisen v. Carlisle & Jacquelin, 52 F.R.D. 253, 269 (S.D.N.Y.1971), rev'd, *Eisen III, supra,* 479 F.2d 1005; Feder v. Harrington, *supra,* 52 F.R.D. at 184; Berland v. Mack, *supra,* 48 F.R.D. at 131, *noted, Eisen III, supra,* 479 F.2d at 1009 n.5; 3B Moore's Federal Practice, para. 23.55, at 23–1155 nn.20, 21.

15. It is not disputed that a successful plaintiff may recover as part of his costs the money expended in providing the requisite notice at the outset of his litigation.

16. This is not a shareholders' derivative suit where the fiduciary duty owed shareholders by the corporation may justify exempting the plaintiff from this burden. Similarly, since a significant percentage of the members of the class are no longer shareholders of ITT, they cannot claim a continuing fiduciary relationship with ITT, nor that the corporation will be sending them written communications in the regular course of business.

17. The mere fact that a plaintiff cannot bear the cost of notice does not indicate that the defendant must pick up this bill. The desire to implement the class action device effectively must always be balanced by the fear that excessive concern for the financial interests of the plaintiff may result in the imposition of unwarranted expenses upon the defendant. Berland v. Mack, *supra,* 48 F.R.D. at 131. This is especially true where, as in this case, the plaintiff has refused to accept the court's invitation to post a bond equal to the cost of providing notice. *Eisen III, supra,* 479 F.2d at 1008. Assuming arguendo that analysis of the relevant criteria indicated the propriety of transferring this cost of litigation initially to the defendant, were the defendant to prevail on the merits, such a bond would have protected it against the possible futility of trying to collect costs from a plaintiff unable to pay. See *Eisen III, supra,* at 1020 (Hays, J., concurring in the result).

3. The class represented by the plaintiff shall include all Hartford Insurance Company (Hartford Fire) shareholders who exchanged their Hartford Fire common stock for Series N convertible preferred stock of International Telephone & Telegraph Corporation (ITT) pursuant to an exchange offer made by ITT on or about May 26, 1970; provided, however, that the above described class shall not include any such persons who indicate in response to notice hereinafter provided for that they do not wish to be so included.

4. The parties are directed to submit to the court within ten (10) days following the date of entry of this order a form of notice to be mailed to class members. If such form of notice is agreed to by all parties, the plaintiff shall send a copy of such notice to each class member by first-class mail within thirty (30) days following the submission of such notice to the court. If such form of notice is not agreed to by all parties, the plaintiff shall send a copy of the notice thereafter authorized by the court to each class member by first-class mail within thirty (30) days following such authorization.

5. Defendants shall provide the plaintiff with listings or materials in their possession useful for the notification of class members not later than ten (10) days before the date upon which the plaintiff is required to send notice under this order.

6. The parties shall obtain a post office box at the United States Post Office within the City of New York for the handling of class correspondence. The box shall remain under the joint control of the parties, or a person selected by them, and all such requests and other materials shall be available for inspection by all parties.

7. The costs of providing notice to the class as herein provided shall be borne initially by plaintiff, provided, however, that should judgment be entered in favor of the plaintiff, the reasonable costs incurred in providing such notice shall be taxed as a cost of this lawsuit.

8. Pending notification of the class, neither plaintiff nor her counsel, nor defendants nor their counsel, shall solicit or otherwise independently contact any member of the class in the absence of court approval.