Richard BERLAND et al., Plaintiffs,

v.

Walter S. MACK et al., Defendants (and Seventeen Other Actions).

Nos. 66 Civ. 1755, 1763, 1764, 1788, 1790, 1928, 1929, 1954, 1975, 2227–2229, 2278, 2394, 2562, 2668, 3538, 3961.

United States District Court
S. D. New York.

Oct. 1, 1969.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff in 66 Civ. 1755.

Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiffs in 66 Civ. 1763; 2227.

Pomerantz, Levy, Haudek & Block, New York City, for defendant Great American Industries, Inc.

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for defendants Walter S. Mack et al.

Abraham I. Markowitz, New York City, for plaintiffs in 66 Civ. 1764; 3961.

Stull & Stull, New York City, for plaintiff in 66 Civ. 1788.

Sidney L. Garwin, New York City, for plaintiff in 66 Civ. 1790.

Nemser & Nemser, New York City, for plaintiff in 66 Civ. 1928.

Fisher & Traub, New York City, for plaintiff in 66 Civ. 1929.

Rosenthal & Gurkin, New York City, for plaintiffs in 66 Civ. 1954; 2229.

William Rosenfeld and Jack E. Hollenberg, New York City, for plaintiffs in 66 Civ. 3538.

Lawrence Milberg, New York City, for plaintiffs in 66 Civ. 1975.

William Rosenfeld, New York City, for plaintiff in 66 Civ. 2228.

Rapoport, Rubino, Franken & Rubin, New York City, for plaintiffs in 66 Civ. 2278.

Leibowitt & Fox, New York City, for plaintiffs in 66 Civ. 2394.

David B. Bartell, New York City, for plaintiffs in 66 Civ. 2562.

Irving Steinman, New York City, for plaintiffs in 66 Civ. 2668.

Royall, Koegel & Wells, New York City, for defendant Frederick J. Pagnani.

Leinwand, Maron & Hendler, New York City, for defendant William T. Beard.

MANSFIELD, District Judge.

We are faced with the necessity of determining whether these 18 consolidated stockholders' actions should be maintained as class actions pursuant to Rule 23, F.R.Civ.P., and, if so, of deciding what notice to members of the class will satisfy the requirements of Rule 23(c) (2), F.R.Civ.P., and what parties should bear the expense of such notice.

Plaintiffs are 40 holders of common stock, and one preferred stockholder (Were), of Great American Industries ("GAI"), a Delaware corporation listed and traded upon the American Stock Exchange. Except for the preferred stockholder (Were), they purchased shares of GAI common between March 21, 1966 and April 29, 1966, a period during which it is alleged that defendants issued various false and misleading statements with respect to GAI. On

April 29, 1966 trading in the stock was suspended by the SEC until October 24, 1966, when trading resumed at market prices substantially below those that had prevailed in April.

Following the SEC's suspension of trading each of the plaintiffs in 1966 instituted an action in this Court charging that during the period from January to April 29, 1966, GAI and various of its officers, directors and employees, in violation of provisions of the Securities Exchange Act of 1934 and rules and regulations promulgated by the SEC thereunder, issued false and fraudulent press releases and filed similar statements with the SEC, which caused the market price of GAI stock to be grossly inflated to the damage of plaintiffs.[1] In one action (Caruso, et al.) plaintiffs sue individually; in five actions plaintiffs sue both individually and in a representative capacity, seeking compensatory and, in some instances, punitive damages; and in the balance of the suits plaintiffs sue either on behalf of the class or derivatively on behalf of the corporation, seeking repayment to it of whatever losses it sustained by reason of its being caused by the other defendants to participate in the transactions under attack, including repayment to it of all personal gains realized by the individual defendants.

In late 1966 proceedings in the actions were stayed by mutual consent of the parties pending a decision by the Court of Appeals for this Circuit upon the SEC's appeal from an order of this Court (per Judge Ryan) denying the SEC's motion for a temporary injunction based upon many of the same facts relied upon by plaintiffs here. S.E.C. v. Great American Industries, Inc., 259 F.Supp. 99 (S.D.N.Y.1966). By decision handed down December 23, 1968, S.E.C. v. Great American Industries, Inc., et al., 407

---

1. The *Were* action, which is a suit by a preferred stockholder of GAI, contains two unrelated claims to the effect that an exchange offer of preferred stock for common stock of GAI was fraudulently induced by misrepresentations that the preferred would be listed on the American Stock Exchange.

F.2d 453 (2d Cir. 1968), the Court of Appeals reversed in part the district court's denial of injunctive relief. Certiorari was denied by the Supreme Court on May 26, 1969. 395 U.S. 920, 89 S.Ct. 1770, 23 L.Ed.2d 237. The present actions were thereupon reactivated. Upon defendants' motion they were, by order dated August 8, 1969, consolidated pursuant to Rule 42, F.R.Civ.P., and, in view of possible conflicts of interest, separate general counsel were appointed to manage the derivative and representative suits. Defendants then filed the present motion seeking an order pursuant to Rule 23, F.R.Civ.P., determining that the actions as consolidated should be maintained as class actions. Hearings were held on July 16, 1969 and August 6, 1969, at which all named plaintiffs either joined in the motion or did not oppose such a determination.

In resolving the question of whether the requirements of Rule 23, F.R.Civ.P., are satisfied, we are mindful of declarations by the Court of Appeals for this Circuit to the effect that the rule must be liberally construed with a view to enhancing the use of class actions as a means of vindicating rights of absent members who are unable, for one reason or another, personally to prosecute; and that the device is particularly suitable for use in suits charging violations of the anti-fraud provisions of the federal securities acts, which have been increasingly recognized as a private policing weapon supplementing governmental administrative action. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 563 (2d Cir. 1968); Green v. Wolf Corporation, 406 F.2d 291, 299 (2d Cir. 1968); see also Dolgow v. Anderson, 43 F.R.D. 472, 481 (E.D.N.Y.1968); Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42, 43–44 (S.D.N.Y.1966); Advisory Committee on Rule 23, Proposed Amendments to the Rules of Civil Procedure, 39 F.R.D. 69, 103 (1966); J. I. Case v. Borak, 377 U.S. 426, 433–434, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964);

Escott v. Barchris Construction Corp., 340 F.2d 731, 733 (2d Cir.), cert. denied, Drexel & Co. v. Hall, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965); Hohmann v. Packard Instrument Co., 399 F.2d 711, 715 (7th Cir. 1968); Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). We are presented here with a classic type of such alleged fraud involving numerous alleged victims, no one of whom suffered substantial enough damages to shoulder individually the expense of being the "guinea pig" in a "test case." The necessity for use of the class suit as a private policing weapon is less apparent here for the reason that the SEC has already taken up the cudgel and obtained injunctive relief. But these weapons are cumulative, not alternative.

As aids in determining the issue in this case we have the benefit not only of the complaints, the parties' affidavits, and two hearings, but also the SEC proceeding. From this record it appears that although the complaints allege issuance of false or misleading statements from January 1966 to April 29, 1966, plaintiffs' claims rest upon the alleged falsity of press releases issued by GAI's management, and statements filed by it with the SEC, during the period from March 21, 1966 to April 28, 1966. These statements related to GAI's acquisition of an option in certain mining strikes of copper, silver and gold ore in Arizona, GAI's proposed acquisition of mining claims in California and Nevada, and the commercial prospects for the Arizona operation. They were amended or corrected in mid-April when the SEC suspended trading in GAI stock for several days. During the relevant period (March 21 to April 29) the market price of GAI stock rose substantially above the level that had prevailed immediately prior to March 21st. Beginning on April 29, 1966 the SEC again suspended trading in the stock, this time for a period of almost six months, until Octo-

ber 24, 1966. Since that time the market price of the stock has declined substantially. Plaintiffs purchased their GAI shares during the March 21–April 29 period at prices allegedly inflated as a result of the defendants' misleading statements.

*Class Action Determination*

■ All parties were initially agreed that the members of the proposed class should be those who purchased GAI shares at any time during the period beginning March 21, 1966 (when the first objectionable press release was issued, see S.E.C. v. Great American Industries, Inc., et al., 407 F.2d 453, 456 (2d Cir. 1968)) and ending April 29, 1966 (the date when trading in GAI stock was suspended by the SEC for a period of almost six months).[2] Plaintiffs more recently have argued, however, that pretrial discovery with respect to the merits and the identity of the class should be permitted to proceed before notice to the class is given, since it might lead to a more restricted delineation of the class. Minutes of Hearing, Aug. 6, 1969, pp. 38–41. Rule 23(c) (1), however, requires that our determination be made as soon as practicable after commencement of the action. These actions were commenced more than three years ago. Determination of the class was thereafter deferred for more than two years upon plaintiffs' representation that their actions were based on substantially the same facts as those before the Court in the SEC case and that in view of the identity of proof it was important to have the Court's findings and decision in that case before proceeding further here. The parties have now had the benefit of the decision and findings in that case. It is not contended that discovery would establish the inappropriateness of a class action, as was the case in Fischer v. Kletz, 41 F.R.D. 377 (S.D.N.Y.1966). Further de-

lay for the purpose of engaging in a scalpel-fine definition of the class would run counter to the mandate of Rule 23(c) (1), and it is possible that such delay might prejudice members of the class who have been led by the pendency of plaintiffs' class actions to defer institution of their own individual or independent suits.

It may eventually turn out, of course, that those who purchased GAI stock after the first SEC suspension of trading in mid-April 1966, or after GAI's issuance of certain corrective press releases and its filing of supplemental statements with the SEC, will be unable to prove reliance upon the earlier alleged misleading release and thus either have no cause of action or not be qualified for classification with those who purchased shares in late March or early April in reliance upon the first release. That possibility, however, is not adequate cause for deferring our determination. We doubt that discovery would conclusively resolve the issue, unless each and every one of thousands of purchasers could be deposed, which would be impractical. Furthermore, assuming without ruling that proof of reliance is essential, that issue may be deferred for separate trial, and if differences within the class later appear, we have the power to reduce the class or create sub-classes. Rule 23(c) (1), (4), F.R. Civ.P.; Green v. Wolf Corporation, 406 F.2d 291, 301 (2d Cir. 1968); Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39, 47 (1968); Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).

■ We therefore start out with the proposition that the class must be defined as those GAI stockholders who purchased common shares after March 21, 1966 and before April 29, 1966.

---

2. See Plaintiffs' "Memorandum in Support of Declaring the Above Entitled Actions as Class Actions," pp. 4–5; and Minutes of Hearing, July 16, 1969, p. 27; "Defendants' Memorandum on Notice to Class," Aug. 6, 1969, p. 2.

Accepting this delineation, it is undisputed that the class would be so numerous as to render joinder of all members impracticable. Rule 23(a) (1). During the relevant period 4,458,400 GAI shares were traded on the American Stock Exchange, and in April 1966 there were at least 16,000 stockholders of record (including many brokerage houses holding shares in "street names" for customers). Over 36,000 GAI stock certificates were delivered to purchasers by GAI's transfer agent, Registrar and Transfer Company, during the period from March 19, 1966 to May 19, 1966. A more precise estimate of the number of purchasers of GAI shares during the relevant period could be obtained by having the transfer agent select them from its "transfer sheets" and having brokers on such list identify those for whom shares were purchased in "street names." However, the statistics already furnished are sufficient to establish the impracticality of joining all members of the class, Demarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968), and yet are not so overwhelming as to indicate that a class action would be an unmanageable device in this case. See *Eisen, supra,* where the class was estimated as 3,750,000 members.

It is equally apparent that there are questions of law and fact common to the class, which would, if resolved in one action, eliminate the necessity of repetitious litigation and provide the numerous claimants with the means of prosecuting claims that might otherwise be too small to warrant individual suit. Since all of the claims are based upon alleged false statements of material facts in the press releases and reports filed with the SEC, a common factual nucleus exists. There are common issues with respect to (1) the nature, materiality and misleading character of the alleged misstatements, (2) what were the true facts (e. g., the ore content of the Arizona property, whether it was commercially mineable, and the status of

GAI's exploratory operations), (3) the circumstances surrounding the issuance of the press releases and filing of statements with the SEC, and (4) defendants' knowledge of the statements and of their falsity, and participation in their issuance and filing.

We are also satisfied that the claims asserted by the representative named plaintiffs are typical of those that would be asserted by other members of the class. Forty (40) such purchasers have already brought suit. It is not suggested that their interests are antagonistic to those of the class. The requirement that plaintiffs stand in the shoes of those they seek to represent is therefore satisfied. Green v. Wolf Corporation, *supra;* Mersay v. First Republic Corporation of America, 43 F.R.D. 465, 468 (S.D.N.Y. 1968).

Turning to the fourth prerequisite established by Rule 23(a), that the representative parties will fairly and adequately protect the interests of the class, plaintiffs, as the purchasers of 9,910 GAI shares worth approximately $45,000 at today's market price, have sufficient incentive to continue prosecution of the consolidated actions. They are represented by outstanding counsel who are experienced in the conduct of stockholders' litigation and aware not only of their responsibilities as counsel but of the substantial compensation usually awarded for the successful conduct of such litigation. We are satisfied, therefore, that both plaintiffs and their counsel would adequately represent the class and that there is no likelihood that they would handle or dispose of the litigation in a collusive manner or act in any way antagonistic to the interests of the class.

In addition to meeting the requirements of Rule 23(a), plaintiffs must satisfy the prerequisities established by Rule 23(b). On this score we are satisfied that the class falls squarely within the provisions of § 3 of the latter subdivision. Fraud actions by stockholders

alleging that they have been misled to their damage in the purchase of securities have repeatedly been recognized as a type of suit intended to be encompassed in the revised Rule 23. See Advisory Committee on Rule 23, Proposed Amendments to the Rules of Civil Procedure, 39 F.R.D. 69, 102–103 (1966); Green v. Wolf Corporation, *supra;* Dolgow v. Anderson, *supra.*

■ We have already enumerated some of the questions common to members of the class, including the nature and materiality of the alleged misstatements, the facts with respect to GAI's plans and prospects for development of the mining properties that were the subject of the press releases, and defendants' knowledge and participation. There may be some questions individual to certain members of a class, such as the extent to which each member relied upon the allegedly false statements and the amount of damages suffered by such members. But the record is clear that the questions common to the class clearly predominate over those affecting individual members only and the possibility that there may be separate trials of the issues of reliance or damages does not bar class action suits. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 566 (2d Cir. 1968); Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42, 45 (S.D.N.Y.1966).

We are further convinced that a class action is superior to any other available method for the fair and efficient adjudication of the issues presented by the various plaintiffs. The stockholdings of each of the plaintiffs before the Court would be too small to justify legal action by a plaintiff on his own behalf. Most of them purchased but a few hundred GAI shares during the relevant period. The market price of these shares ranged from a low of approximately $6 per share during the week prior to March 21, 1966 to a high of $14 per share during the period from March 21 to April 29. Many of the plaintiffs undoubtedly purchased their shares below the high. Assuming that the measure of damages would be the difference between the price paid by each plaintiff and the fair market value of the stock in the absence of the alleged false statements, the maximum damages recoverable by any single plaintiff would be at most a few hundred dollars, hardly enough to enable him to conduct to completion the protracted and complicated litigation required to establish his claim.

Although the 40 plaintiffs own in the aggregate 9,910 GAI shares and the potential recovery for the group is sufficient to require their assumption of a portion of the cost of notice to the class, their interest is still hardly enough to enable them jointly to finance the full course of the consolidated actions, much less to permit the necessary investment of time and talent on the part of their high caliber experienced counsel, who look in such cases to a class recovery as the basis for their compensation. Furthermore, there has been no suggestion of the existence of one or more large stockholders prepared to institute an individual test case at their own expense. If the rights of the class are to be vindicated, therefore, it must be through the vehicle of a class action. See Escott v. Barchris Construction Corp., 340 F.2d 731, 733 (2d Cir.), cert. denied; Drexel & Co. v. Hall, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965). In view of the pendency of 18 actions in this Court and the fact that further suits in other districts, while unlikely, are not barred, a class action would concentrate all litigation in one forum. So far nothing about the consolidated suits indicates that they will be any more burdensome upon the Court or difficult to manage than are class suits generally. Accordingly, we conclude that although there may be some varying fact patterns, principally with respect to reliance and damages, the consolidated actions should proceed as class actions for unitary determination pursuant to Rule 23.

*Notice*

■ We next turn to the question of what notice should be given to members of the class, when the notice should be given, and at whose expense. Rule 23(c)(2) provides that the Court shall direct to members of the class "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Although traditional due process standards require that the notice be one reasonably calculated to apprise members of the class of their opportunity to object or to "opt out" rather than be bound by the determination of the class action, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968), we would be naive not to recognize that where (as here) the maximum amount recoverable on behalf of each of thousands of stockholders would be quite small, those receiving notice would in all probability not have enough incentive to take any action. If a few decided to "opt out" it would probably be because of fear of exposure to some kind of liability rather than because they planned to sue independently. To overemphasize the notice requirement would be to stymie the purpose of the class action device as a means of privately requiring fiduciaries to toe the mark.[3]

■ Rule 23(c)(2) requires the best notice "practicable," not perfect notice. The word "practicable" implies flexibility, with the type of notice depending upon the particular circumstances of each case. Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first class mail would in most cases be the "best notice practicable." But where members are difficult to locate or identify, the benefits of a class action should not be denied altogether, in the absence of evidence that there is no method of giving a notice that is reasonably calculated to apprise the class members of their opportunity to object. Rule 23 contemplates cooperative ingenuity on the part of counsel and the court in determining the most suitable notice in each case.

Applying these standards here, the number and identity of purchasers of GAI shares who became stockholders of record during the period immediately after March 21, 1966 are recorded on transfer sheets kept by the Registrar and Transfer Company, transfer agent for GAI stock, and are readily obtainable from it. Since the number of recorded stockholders during April 1966, including those who acquired their shares before March 21st, were 16,007, we believe that individual notices by first class mail should be given to all transferees who recorded shares, as shown on the transfer agent's sheets, for the period from March 21, 1966 to May 13, 1966, the latter date, which is two weeks after April 29th, being selected to include those who may have delayed transfer of shares purchased in the earlier period.

---

3. The paucity of objectants in class actions has been recognized by two experienced counsel in such suits, Abraham L. Pomerantz and William E. Haudek in a recent article, "Class Actions," Review of Sec.Reg. Vol. 2, No. 5 (March 4, 1969) at p. 940:

"The purpose of requiring notice is to inform each class member that he will be bound, or benefited, by the judgment unless he seeks exclusion and to inform him that he may enter an appearance by his own counsel. Notice also enables members of the class to appear to protest inadequate representation. As a practical matter, in class actions brought up to now, the percentage of persons seeking exclusion or to be represented by their own counsel has been extremely small. Most members of the class are usually content to let the aggressive plaintiff and his lawyer represent their interests, particularly in cases involving a large class where individual members do not have much at stake."

We are faced with the fact that a very substantial percentage of the stock amounting probably to 50% of the total, was registered and held by brokers in "street names" for their customers. Notice to the brokerage concerns would not necessarily reach the customers for whom the stock was purchased. This problem can be partially solved by our directing each of the brokers to furnish to the parties the identity of the purchasers of GAI stock for whom they held such shares in street names during the relevant period.

There remain some members of the class to whom individual notice by mail cannot be sent for the reason that they cannot be identified and located (e. g., persons who have changed their address and left no forwarding address; purchasers in brokers' "street names" who cannot be identified, etc.). The percentage of unidentified class members, however, cannot be determined until we obtain from the transfer agent and the brokers the list of purchasers who can be identified. If the percentage of unidentified members proves to be small, notice by mail to all identifiable members may be "reasonably certain to reach *most* of those interested," Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 319, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950) (emphasis added), and hence sufficient to bind the entire class, with the court retaining the power, should a class member who did not receive individual notice later appear and "opt out," to exclude him from the class. But see Richland v. Cheatham, 272 F.Supp. 148, 155–156 (S.D.N.Y.1967).[4] Defendants,

however, urge that, in addition, notice by publication is essential and that half-page notices in daily editions of the New York Times and Wall Street Journal, published on three successive monthly occasions, would be required to apprise the unidentified members of the existence of the class action. See, e. g., Herbst v. Able, 47 F.R.D. 11, 21 (S.D. N.Y.1969). The cost of such notice is estimated at roughly $38,304, which plaintiffs contend would be prohibitive. We agree and believe that if it is eventually concluded that notice by publication is required, a one-eighth page notice in three successive monthly editions in the two newspapers mentioned would be quite sufficient. A one-eighth page space, which is frequently used by securities houses to advertise new issues, is large enough to catch the eye of most readers, as distinguished from the "ritualistic notice in small print on the back pages" referred to by Judge Medina in *Eisen*, 391 F.2d at 569, which is the type of notice frequently used by executors in estate matters.

*Cost of Notice*

Although the parties suggest that the cost of individual notice by mail would be in excess of $10,000, we anticipate that the actual cost of such notice would be closer to $2,500, this estimate being based on an assumed transmittal of 16,000 individual notices at a cost of $.15 each, including postage.[5] The cost of three successive one-eighth page monthly notices in the New York Times and Wall Street Journal would be $9,711.[6]

Each side contends that the other should be required to pay the expense of

---

4. Normally the issue faced by the court is whether, in view of the large size of the class, notice by publication will suffice and permit dispensing with the more expensive individual notice. Here, because of the limited number within the class, we may be faced with the issue in reverse, i. e., whether individual notice to "most" members of the class will be sufficient to eliminate the necessity for notice by publication.

5. In *Eisen* the cost of individual notice by mail was estimated at approximately $.11 per addressee.

6. The New York Times charges $1,035 per one-eighth page in its daily edition and the Wall Street Journal $2,202 per one-eighth page published in its daily editions for all regions in the United States.

notice. Since plaintiffs individually own but a small percentage of the total shares represented and stand to gain but a few thousand dollars if they are successful in the action, they point out that if they were required to pay the cost of notice it would be out of all proportion to their individual interest and that imposition of such costs upon plaintiffs in their position would sound the death knell of class actions. The very purpose of Rule 23, they argue, is to accommodate the representative prosecution of claims on behalf of numerous small claimants who individually would be unable to afford to undertake the litigation. Defendants, on the other hand, object to payment for notice on the ground that such a rule would require defendants in class actions to finance groundless claims asserted by any individual stockholder.

Defendants further argue that the recent decision of the Second Circuit Court of Appeals in *Eisen, supra,* dictates that the cost of notice initially be borne by plaintiffs.[7] While Judge Medina, in his thorough and thoughtful opinion in that case, indicated that the cost would normally be borne by plaintiffs, that issue was not before the Court. The issue before the Court, in connection with which his remarks were made, was whether, in view of the difficulties anticipated in locating members of the very large class there involved and the heavy expense that would be required to give notice individually by mail, notice by publication alone would suffice. In considering that issue the Court was faced with an unusually "hard" case in which the merit of plain-

tiff's claim was speculative, the single plaintiff before the Court stood to gain damages of only $70, the class was estimated at 3,750,000 persons, no other class members had sought to sue or intervene, and the cost of individual notices was estimated at $400,000.

Even if Judge Medina's dictum were accepted as an indication of the Court's attitude with respect to the issue before us, we do not believe that *Eisen* established a hard and fast rule to the effect that the plaintiff must initially lay out the cost of notice. We have repeatedly been advised that flexibility is important to the proper application of Rule 23, Green v. Wolf Corporation, 406 F.2d 291, 299 (2d Cir. 1968), and that considerable freedom must be allowed the trial judge who is saddled with the burdensome task of managing the class action. The decision as to how the cost of notice is to be allocated between the parties appears to be an appropriate area for exercise of our discretion, having in mind the objective of enabling the class action device to be used effectively to prosecute a meritorious claim (instead of being foreclosed as too expensive) and at the same time restrained from being converted into a vehicle for harassment by frivolous claimants.

Just as it would be unwise to frustrate the use of the class action device by imposition of a rigid rule that plaintiffs must pay the cost of notice, so it would be equally unfair to adopt a rule that the cost must be paid out of the corporate coffers. We do not agree that the corporate defendant should be required initially to pay for the notice merely because charges of breach of fiduciary

7. Prof. Benjamin Kaplin, in a footnote to his excellent article "Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (1)," 81 Harv.L.Rev. 356, 398, n. 137, states that "It may be assumed that * * * plaintiffs will ordinarily be asked to attend to the mechanics * * * and * * * initially bear the expense." The statement is probably based on the traditional assumption that under our system of administration of justice a party commencing a lawsuit does so at his own expense unless permission is granted to proceed *in forma pauperis.* However, he does not state his reasons or attempt any analysis of the issue.

duty are at issue or because it is in a better position to pay than are the named plaintiffs. See Dolgow v. Anderson, 43 F.R.D. 472, 498–499 (E.D.N.Y. 1968). To give a single member of a class who asserts a claim of doubtful merit the power to trigger such a substantial expenditure of corporate funds, without any assurance of joinder on the part of other class members, smacks of confiscation. Should the corporate defendant in such a suit prevail on the merits after laying out the initial expense of notice to the class, it would in most cases find it impossible to obtain reimbursement. See Note, "Class Actions under Federal Rule 23(b) (3)—The Notice Requirement," 29 Md.L.Rev. 139, 156 (1969). We doubt that most stockholders expressly or impliedly consent to such a use of corporate funds for vindication of an issue as to fiduciary duty merely because it is raised by one of them. The suggestion that such abuse of the corporate treasury can be avoided by a preliminary hearing to determine the merits of the claim is illusory. Quite aside from the additional burden that it heaps upon the Court, it would be a rare case where the Court could assure the class of ultimate success even after a preliminary hearing.

■■■■ For the foregoing reasons we believe that no rigid rule as to allocation of expense of notice is advisable and that the better course is to decide the issue in each case on the basis of the relevant factors, including the apparent merit or lack of merit in the claim, the defendant's desire to take advantage of the broader *res judicata* effect of a class action, the number of named plaintiffs and their financial responsibility, the value and percentage of their holdings as compared with those of the entire class, the ability of the plaintiffs to make the initial outlay required, and, of course, the cost of notice. Where the claim appears to be a meritorious one and defendants desire it be prosecuted through a class action, it does not seem unreasonable to require the corporate defendant to share the cost of notice, particularly in a case where plaintiffs may be able to reimburse the corporation if the claim is dismissed. On the other hand, where the claim's merit is doubtful, the cost of notice is high, the defendants have no particular desire to gain the advantages of class *res judicata,* and plaintiffs would be unable in the event of dismissal to reimburse the corporation, plaintiffs should be required to pay out the initial expense rather than obtain a "free ride" at the corporation's expense. The mere fact that Rule 23 was enacted to facilitate the prosecution of class actions in cases where fraud is claimed does not dictate a policy in favor of using corporate funds as a means of financing essential expenses involved in such lawsuits. To the extent that class actions are to be encouraged as a means of private enforcement of federal securities laws, the more appropriate way of funding expenses in such suits would be through public appropriation rather than by a court order forcing an unwilling corporate defendant to pay the expense of plaintiffs prosecuting against it suits which may eventually be dismissed.

■■■■ Applying the foregoing principles here, we are faced with a *prima facie* meritorious case based upon evidence which led the Court of Appeals in the SEC injunction suit to find that misleading statements had been issued by defendants with respect to GAI's mining properties during the period from March 21 to April 29, 1966, accompanied by a sharp increase in the market price of GAI's stock.[8] Defendants, not just

8. The American Stock Exchange's ISL index for the second quarter of 1966 reveals that GAI common stock rose from

a price of approximately $6 per share during the week prior to March 18, 1966 to a high of more than $13 during the

plaintiffs, seek to have the suits declared as class actions, in part because defendants contemplate making a motion for partial summary judgment and desire the advantages of class *res judicata*. The total cost of notice in relation to the estimated damages is relatively modest. Furthermore, we are not dealing with one or two stockholder plaintiffs. Plaintiffs are 40 in number, they own GAI stock presently worth approximately $45,000, and are therefore in a position to pay some of the notice expense required. Accordingly, we direct that the notice, and the cost of furnishing it, be handled as follows:

The parties will submit within 10 days a form of proposed notice to members of the class for approval by the Court. Within 10 days thereafter defendant GAI, at its expense, will furnish to plaintiffs' counsel a list of the names and addresses of all persons who registered with Registrar and Transfer Company acquisitions of GAI common stock during the period from March 21, 1966 to May 13, 1966, with the number of shares acquired by each. Within 10 days after receipt of the list plaintiffs' counsel will, at plaintiffs' expense, mail to each identifiable brokerage house on such list a written communication to the effect that the Court has directed that such brokerage concern furnish to plaintiffs' counsel the names and addresses of all persons for whom it acquired GAI common shares during the period from March 21, 1966 to April 29, 1966, and the number of shares acquired for each. In the event of refusal or failure on the part of any brokerage concern to furnish the required information within two weeks after transmittal of the notice to it,

plaintiffs' counsel may secure from this Court a subpoena duces tecum addressed to such concern.

Upon receipt of the information requested from the brokerage concerns, and not later than 30 days after receipt of the initial list from GAI, plaintiffs' counsel, at plaintiffs' expense, will transmit a copy of the notice by first class mail to each identifiable member of the class.

Upon review of the list of identifiable stockholders, the parties will advise the Court whether they consider notice by publication to be essential to bind the entire class and, if so, whether they desire it. If such notice is requested by either or both parties, a copy of the notice shall be published in three successive monthly editions of the daily New York Times and Wall Street Journal, the size of the notice to be not less than one-eighth of a page. The cost of the notice shall be borne by the party requesting it and, if requested by both sides, one-half shall be borne by plaintiffs and one-half by defendants. In the event that neither side requests such notice, we will decide whether notice by mail to the identifiable stockholders is sufficient to bind the class. If not, we will, pursuant to Rule 23(c) (1), amend our class determination to define the class as all purchasers of GAI common stock to whom a copy of the notice is sent by mail as hereinabove provided.

The expenses initially incurred by the parties in connection with the giving of notice shall be taxed in accordance with such order or orders as may ultimately be entered by the Court upon final disposition of the action.

Settle order on notice.

---

week following March 21, 1966, and that during the period from April 15 to 29, 1966 it opened at over $13 per share, rose to a high of $14 per share, and closed at $10 on April 29th.