**EMERYVILLE TRUCKING, INC., Appellant,**

v.

**HENNIS FREIGHT LINES, INC. and Spector Industries, Inc., Appellees.**

No. 77–1602.

United States Court of Appeals, Third Circuit.

Argued Jan. 12, 1978.

Decided March 16, 1978.

Angelo C. Procopio, Procopio and Burr, Pittsburgh, Pa., for appellant.

John A. Vuono, Charles J. Streiff, Wick, Vuono and Lavelle, Pittsburgh, Pa., for appellees.

Before ADAMS and WEIS, Circuit Judges, and COOLAHAN, Senior District Judge.*

## OPINION OF THE COURT

COOLAHAN, Senior District Judge.

This is an appeal pursuant to 28 U.S.C. § 1291 from a final judgment and order of the United States District Court for the Western District of Pennsylvania dismissing plaintiff's complaint. The sole question presented is whether the District Court erred in ruling that a certain Interstate Commerce Commission order was an order "for the payment of money" within the meaning of 49 U.S.C. § 16(3)(f), which sets forth a one-year limitation period under which plaintiff's complaint for enforcement of said order would be barred. We have determined that this ruling was incorrect and should be reversed.

Plaintiff, Emeryville Trucking, Inc., is the owner of a fleet of trucks used in the business of transporting freight. Defendant Hennis Freight Lines, Inc., is a long-distance common carrier. On December 31, 1975, Hennis was merged into the defendant Spector Industries, Inc., also a long-distance hauler. Spector assumed both the rights and liabilities of Hennis.

From December 1967 to October 24, 1975, Emeryville leased certain of its vehicles to Hennis. Emeryville was to provide a driver for each truck and was to pay road expenses, including fuel and such other expenses necessary for the proper operation of the vehicle. Hennis, under the written agreements between the parties, was to pay Emeryville 75% of its gross revenue on shipments transported on Emeryville's equipment, which was to cover the equipment rental, road expenses, and the driver's wages and benefits.

In response to the national fuel crisis of 1973–1974 and the marked increases in fuel costs affecting the trucking industry, the Interstate Commerce Commission promulgated an order, effective February 7, 1974, authorizing motor carriers to impose a surcharge, not in excess of 6%, upon all charges to shippers which involved the use of fuel. Special Permission No. 74–2525, *Emergency Fuel Surcharge for Line-Haul Transportation Charges & Other Charges— Motor Common Carriers* (set out as Appendix A). Special Permission No. 74–2525 was amended by Ex Parte No. MC–92, *Investigation of Impact of Rising Costs on Motor Common Carriers,* effective July 25, 1974 (set out as Appendix B). It provided that no owner-operator was to receive less compensation for fuel than it received under Special Permission No. 74–2525, and it further established a 3.09% surcharge rate. Ex Parte No. MC–92 remained in effect until April 2, 1975, when it was cancelled by the Interstate Commerce Commission.

* James A. Coolahan, United States Senior District Judge for the District of New Jersey, sitting by designation.

The complaint alleges that during the period from July 1974 (effective date of Ex Parte No. MC–92) until April 1975 (discontinuance date of Ex Parte No. MC–92), the defendant, pursuant to surcharge procedures established by the Interstate Commerce Commission and based upon authenticated receipts for fuel from plaintiff's drivers, collected from its shippers a cumulative sum in the amount of $12,881.76 as reimbursement for the increased cost of fuel and placed said sum in its Contingent Reserve Fund. Hennis did not pass through the surcharge amounts to Emeryville for various reasons (these defenses are not properly the subject of this appeal). Emeryville demanded payment of this sum on various occasions.

Thereafter, on April 22, 1976, Emeryville filed a complaint in the District Court against Hennis and Spector to recover the fuel surcharges established by the Interstate Commerce Commission's orders. Defendants moved for dismissal on the grounds that Ex Parte No. MC–92 was an order for the payment of money and since the complaint was not filed within one year of July 25, 1974 (the effective date of Ex Parte No. MC–92), it was barred by 49 U.S.C. § 16(3)(f), which provides:

"A complaint for the enforcement of an order of the commission for the payment of money shall be filed in the district court or the State court within one year from the date of the order, and not after."

The District Court ruled that Ex Parte No. MC–92 was an order for the payment of money and, since the complaint was not filed within one year of the effective date of that order, it was barred by 49 U.S.C. § 16(3)(f), hence this appeal.

The sole issue we must resolve is the applicability of 49 U.S.C. § 16(3)(f), which only applies if Ex Parte No. MC–92 is found to be an order for the payment of money. The United States Court of Appeals for the Seventh Circuit has recently considered the same question in the similar case of *Carothers v. Western Transportation Co.,* 554 F.2d 799 (7th Cir. 1977), *rev'g* 412 F.Supp. 1158 (S.D.Ill.1976). In *Carothers,* the issue was whether Special Permission No. 74–2525 was an order for the payment of money within the meaning of 49 U.S.C. § 16(3)(f).[1] The District Court had held that the order was an order for the payment of money and, consequently, that plaintiff's suit was barred. The Seventh Circuit, in reversing the District Court, ruled that the order was not one for the payment of money and, therefore, that the action was not barred by 49 U.S.C. § 16(3)(f).[2] The defendant has argued before this Court that the Seventh Circuit erred in its reversal in the *Carothers* case.

Hennis claims that because Emeryville's complaint is one for money and is based upon violations of Ex Parte No. MC–92, this order must be considered an order for the payment of money for Emeryville's suit to make sense. Emeryville, on the other hand, maintains that an order for the payment of money must be for a sum certain or readily ascertainable. Emeryville also claims that § 16(3)(f) should be read in conjunction with 49 U.S.C. §§ 16(1) and (2).[3] Section 16(1)

---

1. The order involved in the case *sub judice,* Ex Parte No. MC–92, is merely an amendment to this order.

2. In the instant case, the district judge stated in his opinion that he was "greatly persuaded" by the District Court's reasoning in *Carothers.* However, this was prior to the Seventh Circuit's reversal of that decision.

3. "§ 16. *Orders of commission and enforcement thereof*

*Award of damages*

(1) If, after hearing on a complaint made as provided in section 13 of this title, the commission shall determine that any party complainant is entitled to an award of damages under the provisions of this chapter for a violation thereof, the commission shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named.

*Proceedings in courts to enforce orders; costs; attorney's fee*

(2) If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file in the district court of the United States for the district in which he

grants authority to the Interstate Commerce Commission to order the payment of damages when appropriate in connection with its power to conduct hearings to resolve complaints filed with that agency. Section 16(2) allows for judicial enforcement of such orders. Since Ex Parte No. MC–92 did not result from any such complaints or hearings,[4] plaintiff contends that Ex Parte No. MC–92 is not an order for the payment of money.

■ Sections 16(1), 16(2), and 16(3)(f) have been read together as relating to an "order for the payment of money." *Carothers v. Western Transportation Co., supra,* 554 F.2d at 802; *Missouri Pacific Railroad Co. v. Austin,* 292 F.2d 415 (5th Cir. 1961). Although we do not believe that an order for the payment of money within the meaning of § 16(3)(f) necessarily must have arisen directly out of a proceeding for violation initiated by a complaint, *Aluminum Co. of America v. Admiral Merchants Motor Freight, Inc.,* 486 F.2d 717 (7th Cir.), *cert. denied,* 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973); *Container Corp. of America v. Admiral Merchants Motor Freight, Inc.,* 489 F.2d 825 (7th Cir. 1973), *cert. denied,* 415 U.S. 985, 94 S.Ct. 1581, 39 L.Ed.2d 882 (1974), nevertheless we are in agreement with the Seventh Circuit's ruling in the *Carothers* case, and adopt the reasoning set forth therein, that the ICC orders involved cannot be characterized as orders for the payment of money.

■ The relevant order in this case was prospective in effect[5] and was more in the nature of a regulation than an order for the payment of money, which ordinarily follows after formal fact-finding procedures. The surcharges which were authorized by Ex Parte No. MC–92 were to be charged and collected after the effective date of that order. Also, the order was not for a sum certain or a sum readily calculable to be collected by the carrier. The increased costs for fuel could only be determined after the completion of each haul. Thus, the defendant's obligations under the order were only to arise at that time. Furthermore, the order does not state when the funds involved should be transmitted to the party to be benefited if not originally collected by that party. Thus the order is unlike what is generally conceived to be an order for the payment of money. Also, because the order did not specify when payments were to be transferred by the party collecting to the party to be benefited thereby, the one-year limitation period of § 16(3)(f) cannot be said to commence from any such date set by the order for payment.[6] *Missouri Pacific Railroad Co. v. Austin, supra,* 292 F.2d 415.

It is very doubtful that Congress, in enacting § 16(3)(f), intended that it apply to an ICC order such as Ex Parte No. MC–92. If applied as the defendant contends, and as the District Court ruled, it would allow less

---

resides or in which is located the principal operating office of the carrier, or through which the road of the carrier runs, or in any State court of general jurisdiction having jurisdiction of the parties, a complaint setting forth briefly the causes for which he claims damages, and the order of the commission in the premises. Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated, and except that the plaintiff shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings unless they accrue upon his appeal. If the plaintiff shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit."

4. Plaintiff had not pursued its claims against the defendant before the Interstate Commerce Commission prior to the institution of this suit.

5. In this respect, Ex Parte No. MC–92 can be likened to an ICC determination that a proposed rate increase is just and reasonable.

6. The defendant at oral argument alternatively maintained that the "date of the order" at which the one-year limitation period of § 16(3)(f) begins could be construed as referring to the contractual dates for payment set by the parties or as referring to the dates each individual claim arose rather than the formal effective date of the order. However, we decline so to construe § 16(3)(f).

than one year's time within which to recover funds collected pursuant to that order, since the carrier's obligations under Ex Parte No. MC–92 (or Special Permission No. 74–2525) would only arise after the effective "date of the order." In fact, although Ex Parte No. MC–92 (or Special Permission No. 74–2525) does not contain an expiration date, the proffered use of § 16(3)(f) would, in effect, limit that order's life to one year, since judicial enforcement would thereafter be barred. As our brothers have stated:

"It seems highly illogical to conclude that Congress provided a one year period of limitation beginning the date of issuance of an order when any liability thereunder would arise only at some indefinite time in the future."

*Carothers, supra,* 554 F.2d at 803. Thus, § 16(3)(f) cannot be said to apply to Ex Parte No. MC–92.[7]

For the foregoing reasons, we conclude that Ex Parte No. MC–92 is not an order for the payment of money and, therefore, that 49 U.S.C. § 16(3)(f) does not apply to bar plaintiff's suit.

The judgment appealed from will be reversed, and the cause will be remanded for further proceedings not inconsistent with this opinion.

## APPENDIX A

Special Permission No. 74–2525, 39 Fed. Reg. 5537, as amended on February 8, 1974, 39 Fed.Reg. 5548, provides in pertinent part:

SPECIAL PERMISSION NO. 74–2525
EMERGENCY FUEL SURCHARGE FOR LINE–HAUL TRANSPORTATION CHARGES & OTHER CHARGES—MOTOR COMMON CARRIERS

It appearing, That, in view of the critical fuel situation prevailing throughout the Nation, and its effect upon modes of transportation subject to this Commission's jurisdiction, immediate relief is warranted to permit *motor common carriers* to expeditiously recover increased fuel costs;

*It further appearing,* That, this Commission entered Special Permission Order No. *74–1825,* as amended, for the purpose of authorizing a means of passing on to the consumer on a dollar-for-dollar basis increases in fuel costs, *upon not less than 10 working days' notice;*

*It further appearing,* That, the authority granted therein did not entirely meet the immediate need of such carriers because of the requirements of extensive cost data and for 10 days' notice;

*And it further appearing,* That, the average increase in fuel expenses, including taxes, throughout the Nation since May 15, 1973, has increased such carriers costs by amounts requiring an approximate increase of 6 percent in operating revenues; and that, therefore, there is an urgent need for immediate relief in order that such carriers may recoup such average increased costs forthwith; and good cause appearing therefor:

*It is ordered,* That:

1. All such carriers or their authorized publishing agents that have tariffs or schedules on file with this Commission, or those carriers or agents that may in the future file tariffs or schedules with this Commission, are hereby authorized to depart from the terms of the governing

---

**7.** The defendant also intimates that plaintiff's suit can only be authorized under § 16(2), which allows for judicial enforcement of ICC orders for the payment of money. In this way, the defendant suggests that plaintiff's complaint is actually based upon the assumption that Ex Parte No. MC–92 is an order for the payment of money. However, we are convinced that plaintiff's suit does not derive its authority from § 16(2) since it is not one to enforce an order for the payment of money. This action could be maintained as one to en-force an order other than an order for the payment of money under 49 U.S.C. § 16(12), which provides:

"If any carrier fails or neglects to obey any order of the commission *other than for the payment of money,* while the same is in effect, . . . any party injured thereby, . . . may apply to any district court of the United States of competent jurisdiction for the enforcement of such order, . . ." [Emphasis supplied.]

*See Carothers, supra,* 554 F.2d at 803.

tariff circulars to file and post on *not less than one days' notice* to this Commission and the public, an increase in passenger fares and freight charges for line-haul transportation and charges for other *services which consume fuel,* such as pick-up and delivery, which must be specified in the tariffs, by means of a percentage surcharge, not to exceed 6 percent, except as otherwise authorized by this Commission. The surcharge provisions must include a rule for disposition of fractions of one cent or other stated amounts, or refer to a conversion table of increased charges or fares.

2. The Commission shall analyze the impact of fuel expenses on a month-to-month basis to determine whether there is justification for increasing or reducing the surcharge authorized by this order; if conditions warrant, this order will be amended accordingly.

. . . . .

4. The person actually responsible for the payment of fuel charges, by contract or otherwise, is to receive the full increase in revenue derived from surcharges published hereunder. . . .

5. This permission will remain in effect until further order of the Commission.

. . . . .

### APPENDIX B

Motor Common Carriers, *Investigation of Impact of Rising Costs,* Ex Parte No. MC–92, Notice of July 25, 1974 (39 Fed.Reg. 27778), as amended, August 7, 1974, provides in pertinent part:

. . . no owner-operator shall receive less compensation for *fuel* than he formerly received from the certificated carrier under the authority of Special Permission No. 74–2525; . . .

*It is further ordered,* That the compensation due owner-operators upon voluntary cancellation of the surcharge or upon termination of the surcharge by or-

der of the Commission be, and it is hereby to be computed in the following manner:

3.09 percent of the old base rate (rate in effect July 8, 1974) plus the owner-operators' share of the revenues derived from the new rates after a reduction in dollar amount equal to the above 3.09 percent . . . . .