## PALM COURT, INC. v DURHAM, et al.
### Case No. 86-3885-CL-F
Fifteenth Judicial Circuit, Palm Beach County
April 29, 1991

## OPINION OF THE COURT

DANIEL T. K. HURLEY, Circuit Judge.

*ORDER GRANTING UNIT OWNERS' MOTION FOR
CERTIFICATION OF A CLASS OF INVESTORS TO
PROSECUTE COUNTS III, V & VI BUT DENYING USE OF
PRESUMPTION OF RELIANCE*

THIS CAUSE came before the court upon the plaintiffs'/unit owners' motion to certify a class pursuant to rule 1.220, Fla.R.Civ.P., to prosecute counts III, V and VI for securities fraud. For the reasons stated hereafter, the court concludes that a class of investors may be certified but, because of the allegations in the complaint, the representative parties plaintiff may not employ a presumption of reliance. Accordingly, the court will conduct separate trials on this single issue.

Before a plaintiff may prosecute a class action, he must prove that each of the prerequisites of rule 1.220, Fla.R.Civ.P. is met. The failure to meet any one of the requirements precludes certification of the class. Under rule 1.220, the plaintiff must prove that "(1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class." Subsection (b) of the rule contains additional criteria which will be discussed hereafter.

Although class action treatment is usually favored in securities fraud cases, *Berland v Mack,* 48 F.R.D. 121 (S.D.N.Y. 1969), a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of [the class action rule] have been satisfied." *General Telephone Co. v Falcon,* 457 U.S. 147, 161, 102 S.Ct. 1364, 1372, 72.L.Ed.2d 740 (1982).

In the case at bar, with seventy potential plaintiffs spread up-and-down the eastern seaboard, there can be little doubt that the rule's numerosity requirement has been satisfied. *See, e.g., Riordan v Smith Barney,* 113 F.R.D. 60 (N.D. Ill.— 1986)(geographic dispersion is relevant consideration); *but see Block v First Blood Associates,* 691 F.Supp. 685 (S.D.N.Y. 1988). By the same token, no serious challenge is made to the ability of the representative parties and their experienced counsel to fairly and adequately protect and represent each member of the class. Moreover, since every investor purchased a similar interest in the same hotel from the same seller and, thereafter, sustained similar losses, it cannot be argued seriously that the claims of the representative parties are not typical of the claims of each member of the class.

The controversy in this case centers on whether the claims of the representative parties raise questions of law or fact common to the questions of law or fact raised by the claims of each member of the class. In short, do individual questions of law or fact predominate over common questions so as to preclude class action treatment? Putting aside, for the moment, the method by which the plaintiffs seek to establish the element of reliance, it is readily apparent that the claims of the representative parties raise exactly the same questions of law and fact that would be raised by each member of the class. Every investor/unit owner purchased a similar interest in the same hotel from the same seller at virtually the same time and, thereafter, sustained similar

losses. Accordingly, if there is a stumbling block to class certification in this case, it must involve the issuance of reliance.

Reliance is an element of a plaintiff's action for damages under sections 517.301 and 517.241(3), Florida Statutes (1989). To prevail in a securities fraud action, "the plaintiff must establish: '(1) a misstatement or an omission (2) of a material fact (3) made with scienter (4) on which the plaintiff relied (5) that proximately caused his injury.' " *Rousseff v E. F. Hutton Co., Inc.,* 843 F.2d 1326, 1329 (11th Cir. 1988) (quoting *Huddleston v Herman & MacLean,* 540 F.2d 534, 543 (5th Cir. 1981), *aff'd in part, rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)). *See generally* Hanzman, *Civil Remedies Under the Florida Securities & Protection Act,* Fla. Bar J., Oct. 1990, at 36. The reliance element is "one aspect of the ubiquitous requirement that losses be causally related to the defendant's wrongful acts." *Sharp v Coopers & Lybrand,* 649 F.2d 175, 186 (3rd Cir. 1981). It "is just a short-hand method of invoking . . . the requirement common to all tort cases of proving that the alleged tort actually harmed the plaintiff." *Latigo Ventures v Laventhol & Horwath,* 876 F.2d 1322, 1326 (7th Cir. 989).

PKF contends that proof of individual reliance is an indispensable element in a fraud action and, therefore, class action treatment is always inappropriate. Defendant cites the long-established Florida rule that an action based upon fraud and deceit is inappropriate for class action consideration. *See Rosenwasser v Frager,* 307 So.2d 865 (Fla. 3d DCA 1975). It makes no difference, argues PKF, that this is a *securities* fraud case rather than a fraud action. Both, says PKF, require proof of individual reliance and, consequently, neither can be tried in a class action. PKF's premise is correct; its conclusion is wrong. Both actions do require proof of individual reliance, but this does not preclude class action treatment for state securities fraud claims.

Florida's securities laws share a common goal with federal securities regulations. They aim to protect the investing public. Although separate, they stand side-by-side as bulwarks deterring fraud from the marketplace. Florida's statutory scheme, to a large extent, is patterned after its federal counterpart and, thus, it is not surprising that state courts often refer to federal case authority when interpreting state securities statutes. *See, e.g., E. F. Hutton & Co., Inc. v Rousseff,* 537 So.2d 978 (Fla. 1989). For the same reason, it is logical for state courts, in evaluating the efficacy of remedial procedural devices for handling securities fraud cases, to draw upon the well-developed experience of the federal judiciary.

Federal courts view class actions as procedural weapons to combat securities fraud. "Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, 'since the effectiveness of the securities laws may depend in large measure on the application of the class action device.' " *Eisenberg v Gagnon,* 766 F.2d 770, 785 (3rd Cir. 1985) (quoting *Kahan v Rosenstiel,* 424 F.2d 161, 169 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 190 (1970)). The Second Circuit made a similar observation in *Green v Wolf Corp.,* 406 F.2d 291, 296 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969), when it stated, "[A] class action [in a securities fraud case] may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf." The Third Circuit went so far as to say, "[T]he interests of justice require that in a doubtful case. . .any error, if there is to be one, should be committed in favor of allowing a class action." *Kahan v Rosenstiel, supra,* at 169 (quoting *Esplin v Hirschi,* 402 F.2d 94, 101 (10th Cir. 1986), *cert. denied,* 394 U.S. 918, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969)). Given the unanimity of federal opinion on this subject, and bearing in mind that nothing in Florida's statutes, rules or case law expressly prohibits class actions in these circumstances, this court holds that class action treatment is available in state securities fraud cases provided that all of the requirements of rule 1.220, Fla.R.Civ.P., are satisfied.

Traditionally, a plaintiff in a securities fraud action establishes reliance by "proof that the misrepresentation or omission actually induced the plaintiff to act differently than he would have acted in his investment decision." *St. Louis Union Trust Co. v Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 562 F.2d 1040, 1048 (8th Cir. 1977), *cert. denied,* 305 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978). Plaintiffs accept this principle but urge that the allegations in the complaint entitle them to employ a presumption of reliance. In other words, plaintiffs contend that they should be relieved of the burden of proving individual reliance and, instead, the defendant should be required to disprove reliance. Plaintiffs rely on the Supreme Court's decision in *Affiliated Ute Citizens v United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). This case involved a finding of securities fraud on the part of two bank officers who, in effect, acted as "market makers", *i.e.,* they encouraged Indian shareholders to dispose of their stock without disclosing that the officers were purchasing some of the shares for themselves and were selling the remainder at prices

138

far in excess of that being paid to the Indian shareholders. The Supreme Court held that the Indian "sellers had the right to know that the [bank officers] were in a position to gain financially from their sales and that their shares were selling for a higher price in that market." *Id.,* at 1472. Therefore, the Court created a rebuttable presumption of reliance and held that

> [u]nder the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of his decision. This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact. *Ibid.*

Whether *Affiliated Ute's* presumption of reliance may be employed in the case at bar depends on the allegations in the complaint. Reduced to their essence, they indicate that Pannell Kerr Forster (PKF), an accounting firm, was retained by the developer of the Palm Court Hotel to prepare a market demand report, a financial forecast and financial projections which PKF knew would be used to attract investors for the project. The allegations further state that, before the sales were consummated, PKF learned that its reports were not reliable due to numerous changes in conditions. Nonetheless, PKF, having a continuing duty to disclose, failed to disclose the inaccuracy and unreliability of its reports.

If a party, with a continuing duty to disclose, makes an affirmative representation and subsequently learns that the representation is no longer accurate but fails to disclose, is there a misrepresentation, an omission, or a mixture of both? A misrepresentation is "[a]ny manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts." H. Black, *Black's Law Dictionary* (4th ed. 1968). In the context of a securities fraud action, a material representation is one that a reasonable investor would have considered important in his decision to enter the market. *See Flynn v Bass Brothers Enterprises, Inc.,* 744 F.2d 978 (3rd Cir. 1984). The Supreme Court defined a material omission in a related context as "a substantial likelihood that a reasonable [investor] would consider it important . . . [T]here must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Industries, Inc. v Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) (material omission in proxy statement). The distinction

**139**

between a misrepresentation and an omission is not always easy to draw. *See, e.g., Caleb & Co. v E. I. DuPont de Nemours & Co.,* 599 F.Supp. 1468 (S.D.N.Y. 1984). Nonetheless, it remains important because *Affiliated Ute's* presumption of reliance applies only to omissions. No presumption arises in cases of alleged misrepresentations. *See, e.g. Vervaecke v Chiles, Heider & Co.,* 578 F.2d 713, 717-18 (8th Cir. 1978); *Rifkin v Crow,* 574 F.2d 156, 262-63 (5th Cir 1978); *Schlick v Penn-Dixie Cement Corp.,* 507 F.2d 374, 380-81 (2d Cir. 1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). Indeed, the Eleventh Circuit has held that a presumption of reliance does not arise in a 'mixed case', *i.e.,* a case with combined allegations of misrepresentations and omissions. *See, Kirkpatrick v J. C. Bradford & Co.,* 827 F.2d 718 (11t Cir. 1987).

The Third Circuit has a more flexible approach for dealing with combined misrepresentations and omissions. In *Sharp v Coopers & Lybrand,* 649 F.2d 175 (3rd Cir. 1981), the Court said that the presumption of reliance should be employed "only where it is logical to do so." *Id.,* at 188 (quoting *Lewis v McGraw,* 629 F.2d 192, 195 (2d Cir. 1980) (action under section 14(e) of the Williams Act, 15 U.S.C. section 78n(e)), *cert. denied,* — U.S. —, 101 S.Ct. 354, 66 L.Ed.2d 214 (1980). The Court acknowledged the usual justification for creating a presumption of reliance, *viz.* that the plaintiff in a securities fraud action is generally incapable of proving that he relied on a material omission, but found this unhelpful in determining which party should shoulder the reliance burden. The Court opened for a "context-specific" test and held that "the proper approach to the problem of reliance is to analyze the plaintiff's allegations, in light of the likely proof at trial, and determine the most reasonable placement of the burden of proof of reliance." *Id.* at 188. *See also Hoxworth v Blinder, Robinson & Co.,* 903 F.2d 186 (3rd Cir. 1990).

Plaintiffs complaint in the case at bar presents a 'mixed case' of misrepresentations and omissions. Even under the Third Circuit's context-specific test this court would conclude that it is more reasonable to require the plaintiffs to shoulder the burden of establishing reliance. They occupy the superior position to prove that they were "misled to [their] detriment." *See Latigo Ventures v Laventhol & Horwath, supra,* at 1326. In so holding, this court is mindful that if it "were to interpret *Affiliated Ute* broadly to hold that a plaintiff does not have to plead or prove reliance in a complaint alleging both misstatements and omissions, then reliance would no longer be an essential element of a Rule 10b-5 complaint and case." *Eckstein v Balcor Film Investors,* 740 F. Supp. 572, 578 (E.D.Wis. 1990). Accord-

140

ingly, plaintiffs in this action are not entitled to utilize *Affiliated Ute's* presumption of reliance.

Alternatively, plaintiffs contend they are entitled to employ a presumption of reliance because their allegations indicate that PKF committed a fraud on the market.

Federal courts have used the fraud-on-the-market theory to permit a plaintiff's reliance on the integrity of the market to substitute for plaintiff's reliance on the defendant's misstatement or omissions. The plaintiff's reliance on the integrity of the market place of a security is considered justified because the theory assume that in an efficient and developed market the price of a security reflects most, if not all, publicly available information including the defendant's material misstatements and omissions.

*Eckstein v Balcor Film Investors, supra,* at 579 The Supreme Court in *Basic, Inc. v Levinson,* 485 U.S. 224, 108 S. Ct. 978, 99 L.Ed.2d 194 (1988), recognized the fraud-on-the-market theory and held that it can be utilized to create a rebuttable presumption that a plaintiff relied on the integrity of the market to determine the price of a security. The Court, however, did not explicitly state the type of security market for which the fraud-on-the-market theory can be utilized to create the presumption of reliance. Assuming this is an open question under Florida law, this court would adopt the Sixth Circuit's view that "[t]he fraud on the market theory cannot be applied logically to securities that are not traded in efficient markets." *Freeman v Laventhol & Horwath,* 915 F.2d 193, 198 (6th Cir. 1990); *see also Ross v Bank South, N.A.,* 885 F.2d 723 (11th Cir. 1989) (Tjoflat, J., dissenting). An efficient market is an open, well-developed market which "rapidly reflects new information in price." *Cammer v Bloom,* 711 F.Sup. 1264, 1276 n. 17 (D.N.Y. 1989) (quoting 4 Bromberg & Lowenfels, *Securities Fraud and Commodities Fraud* section 8.6 (Aug. 1988)). The securities in the case at bar—interests in the Palm Court Hotel—were not sold in an efficient market; they were offered through a private placement memorandum to a small, select group of investors. Accordingly, the court holds that the plaintiffs are not entitled to invoke the fraud-on-the-market theory to justify a presumption of reliance.

This court's holding that plaintiffs must prove individual reliance does not eliminate class action consideration. "The presence of individual questions as to the reliance of each investor does not mean that the common questions of law and fact do not predominate over questions affecting individual members. . . Rather than eliminate securities class actions, it would be more efficient to order separate trials, if necessary,

limited to the issue of reliance." *Eisenberg v Gagnon, supra,* at 786; *see also Longden v Sunderman,* 123 F.R.D. 547 (N.D.Tex. 1988). In the case at bar it is demonstrably clear that, despite the need for proof of individual reliance, common questions of law and fact predominate over individual questions. Moreover, the Court is satisfied that class action treatment is necessary to avoid the risk of inconsistent or varying adjudications concerning individual members of the class. *See* Rule 1.220(b)(1)(A), Fla.R.Civ.P.

Accordingly, it is ORDERED and ADJUDGED as follows:

(1) Plaintiffs motion to certify a class to prosecute counts III, V and VI is granted within the limitations of this order.

(2) Within two days of the entry of this order, plaintiffs shall file an amended pleading in compliance with Rule 1.220(c), Fla.R.Civ.P.

(3) Also, within ten days of the entry of this order, plaintiffs shall submit a plan for full compliance with all pertinent provisions of Rule 1.220, Fla.R.Civ.P.

DONE and SIGNED in Chambers at West Palm Beach, Florida, this 29th day of April, 1991.